**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| KENT KIMBERLY GOWELL,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. CV 13-4644-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 2, 2013, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 9, 2013, and August 6, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 30, 2014, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 22, 1959. [Administrative Record ("AR") at 19, 63-66.] He obtained a G.E.D., and has past relevant work experience as a salesperson. [AR at 19, 38, 42, 168-69.]

On February 4, 2010, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since August 1, 1999. [AR at 12, 143-50, 162; Joint Stipulation ("JS") at 2.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 12, 69-72, 77-81, 83-84.] A hearing was initially held on September 7, 2011; it was continued so that plaintiff could obtain representation. [AR at 12, 26-33.] A second hearing was held on February 13, 2012, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 12, 34-62.][1] A vocational expert ("VE") also testified. [AR at 12, 52-60.] On March 7, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from February 4, 2010, through the date of the decision. [AR at 12-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 8.] When the Appeals Council denied plaintiff's request for review on May 23, 2013, the ALJ's decision became the final decision of the Commissioner. [AR at 1-5]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

[1] At the February 13, 2012, hearing, plaintiff amended his alleged onset date to February 4, 2010, the protective filing date of his SSI application. [AR at 43, 162; see also JS at 2.] In so amending, plaintiff "effectively withdr[ew] his [Disability Insurance Benefits] claim," since his date last insured was December 31, 2004, well before his amended onset date. [JS at 2; see AR at 13, 15, 160, 162.]

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

/

/

/

**A. THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/

/

/

/

/

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 4, 2010.[2] [AR at 15.] At step two, the ALJ concluded that plaintiff has the severe impairments of "affective disorder, polysubstance dependence in remission, and pedophilia." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[3] [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform "a full range of work at all exertional levels but with non-exertional limitations." [AR at 17.] Specifically, the ALJ determined that plaintiff "is limited to the performance of unskilled work involving simple routine tasks that do not involve exposure to respiratory irritants." [Id.] At step four, based on plaintiff's RFC and the VE's testimony, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 19.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as a "general cashier/clerk" and "fast food restaurant worker." [AR at 20.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from February 4, 2010, through the date of the decision. [AR at 13, 21.]

/

/

/

/

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2004. [AR at 15.]

[3] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

V.

**THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ erred in the assessment of plaintiff's mental residual functional capacity by improperly rejecting the opinion of plaintiff's treating psychologist and "finding that [p]laintiff's only mental limitation was to 'the performance of unskilled work involving simple routine tasks[;]'" (2) the ALJ erred in his assessment of plaintiff's credibility; and (3) the ALJ erred in relying on the VE's response to his incomplete hypothetical question. [JS at 3-8, 14-17, 21-24.] As explained below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**CREDIBILITY**

Plaintiff contends that the ALJ "improperly undermined [p]laintiff's credibility and rejected his assertions regarding his subjective symptoms and functional limitations." [JS at 15-17, 21-22.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ did not find "affirmative evidence" of malingering [see generally AR at 12-21], the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (Where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so."). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346.

In an Adult Function Report dated February 20, 2010, plaintiff stated that "most days," he remains "in bed and secluded in [his] room as [he does not] want to see or hear and least of all be with other people." [AR at 175; see also 176.] He indicated that he showers "some days," "rarely" gets dressed, eats "sporadically," and spends "most days consumed with depression and worr[y]ing about what [he is] going to do when ... parole no longer pays [his] rent." [Id.] Plaintiff reported that he has "good days and bad," sometimes with "highs and lows during the [same] day," and that his "depression and [despair] overwhelm[]" him. [AR at 176.] Plaintiff stated that he "use[d] to enjoy reading but [has] trouble concentrating now," and that he has the television on "almost all day and night," but that he "ac[t]ually watch[es] it sp[o]radically." [AR at 179.] Although plaintiff indicated that he does spend time with others, he reported that when he does so, he "get[s] uncomfortable and look[s] for excuses to end the visit." [Id.] With respect to his family, plaintiff reported that he has been "estranged" for more than 20 years, and that he has spoken to his mother on the phone "[two] or [three] times in the last 10 years." [AR at 180.] Plaintiff indicated that his "illness, injuries, or conditions affect" his ability to understand, follow instructions, talk, complete tasks, get along with others, and concentrate, as well as affect his memory. [Id.] He indicated that he does not finish tasks that he starts because he "loses interest in things

easily," does not follow written or spoken instructions well, loses patience and respect "quickly" when dealing with authority figures, gets "stressed out easily," and does not like change. [AR at 180-81.] He reported that he was once suspended for a week from a job "because of inappropriate behavior with a co-worker." [Id.]

At the hearing on February 13, 2012, plaintiff testified that he has lived in a shared room in a group home since being released from prison. [AR at 41.] He stated that he believes he is unable to do any kind of work because his "depression and ... anxieties just seem to overwhelm" him on "an almost daily basis," so that he "do[es] not like to be around or talk with other people," and "become[s] very recluse [sic]." [AR at 44.] He testified that he has been receiving treatment through the Parole Outpatient Clinic ("POC") since his release from prison, and explained that he had been treated by POC Psychologist Dr. Mahnovski since July 2010, and before that, by POC Psychologist Dr. Webb. [AR at 44-45.] He also indicated that he receives psychiatric treatment at the POC every 90 days. [AR at 45.] He testified that he was "previously" in group therapy with Dr. Webb, but that Dr. Mahnovski "has preferred to deal with me on a one-on-one basis." [AR at 46.] He stated that he is "estranged" from his family, and that "most of [his] friends have disappeared," but that his mother, who lives out of state and corresponds with him through letters, is still "his main support." [AR at 50.] Plaintiff testified that when he first got out of prison, he tried to get his old job back, and "would have taken any job," but also indicated that he has not applied for any work other than his attempt to get his previous job back. [AR at 51-52.] He also explained that, many years earlier, he was suspended from his sales job for one week for "confrontations with the manager." [AR at 55.]

In his decision, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" [AR at 18], which "satisfie[s] the first prong of the ALJ's inquiry regarding the credibility of [plaintiff]'s complaints." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); see also id. ("After finding that Vasquez has a back disorder which is a severe impairment, the ALJ acknowledged that Vasquez's injuries could reasonably be expected to produce *some* of the pain and other symptoms alleged.") (internal quotation marks omitted, italics in original). The ALJ went on to find, however, that plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the assessed RFC. [AR at 18.]

The ALJ rejected plaintiff's subjective symptom testimony because he found that: (1) "neither the severity nor the extent of the alleged limitations is supported by the medical evidence of record[;]" (2) plaintiff's "testimony regarding his lack of effort to find employment since his release from prison in 2010" weakened his credibility; and (3) plaintiff's credibility was further "undermined by his lack of current treatment for pedophilia, which is curious since his conduct related to his pedophilia led to his incarceration for ten years for child molestation." [AR at 18.][5]

Having carefully reviewed the record, the Court concludes that the ALJ's reasons for rejecting plaintiff's credibility are insufficient to constitute clear and convincing reasons and/or are not supported by substantial evidence. First, the ALJ's finding that plaintiff's "testimony regarding his lack of effort to find employment since his release from prison in 2010" weakened his credibility [AR at 18], misstates the record and is not supported by substantial evidence. See Reddick, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted). Specifically, the ALJ appears to refer to plaintiff's hearing testimony, where he stated that when he was first released from prison, he "went back to Dependable Auto Shippers and asked ... to get [his] employment back," and that he "would have taken any job" at that point. [AR at 52.] The ALJ fails to point to any place in the record -- and the Court finds none -- where plaintiff indicates either that he was actually capable, or that he believed he was actually capable, of performing that or any other job. [See, e.g., AR at 18, 44.] In fact, plaintiff specifically testified

---

[5] Although plaintiff identifies only two reasons offered by the ALJ for finding plaintiff "not credible," having reviewed the ALJ's decision, the Court addresses these three reasons articulated therein. [JS at 16; AR at 18.]

that he did not believe he was able to do any kind of work because of his "depression" and "anxieties," and indicated that he had been in treatment ever since his release from prison. [AR at 44-45.] Moreover, treatment notes from Dr. Mahnovski indicate that at least some of plaintiff's anxiety involved his concerns with regard to "unemployment and his ability to work and sustain an income." [See AR at 355.]

Next, the ALJ's determination that plaintiff's credibility "is undermined by ... his lack of current treatment for pedophilia, which is curious since his conduct related to his pedophilia led to his incarceration for ten years for child molestation" [AR at 18], is not clear and convincing. As an initial matter, the ALJ fails to explain his conclusion that plaintiff was not in treatment for his pedophilia at the time of the decision. [Id.] The Court observes that, in multiple progress notes between April 2010 and October 2010, Dr. Webb indicated that plaintiff was regularly attending sex offender rehabilitation group therapy. [See AR at 358-59, 361, 368, 370, 372.] Plaintiff testified that he began treating with Dr. Mahnovski in July 2010, and that she prefers to "deal with [him] on a one-one- basis" because "she thought it was more relevant to my case." [AR at 45-46.] In other words, plaintiff testified that he was receiving individualized therapy as opposed to group therapy -- not that he was receiving no treatment for his pedophilia. [AR at 18, 46.] Indeed, plaintiff appeared to indicate that he was in ongoing treatment with Dr. Mahnovski from July 2010 until at least the date of the hearing, and that he had seen her between eight and ten times at that point. [See AR at 45-46.] Moreover, the ALJ failed to explain how, even assuming plaintiff's psychologist's treatment plan did not specifically address plaintiff's pedophilia, his credibility is in any way impacted either by the physician's treatment plan, or by plaintiff's participation in his physician's treatment plan. Finally, to the extent that the ALJ suggests that Dr. Mahnovski's treatment plan is, itself, evidence of "conservative treatment" sufficient to discount plaintiff's testimony regarding the severity of an impairment (see Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)), the Court observes that plaintiff's alleged symptoms related to his depression -- not his pedophilia -- are the bases of plaintiff's allegations that he is unable to do work. [See generally AR at 34-62, 175-82.]

Finally, the ALJ's determination that "neither the severity nor the extent of the alleged limitations is supported by the medical evidence of record" [AR at 18], was not a legally adequate reason to reject plaintiff's subjective symptom testimony. Once plaintiff produced objective medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support the severity of pain or symptoms alleged. See Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (explaining that once a plaintiff produces medical evidence of an underlying impairment that is reasonably likely to cause the alleged symptoms, medical findings are not required to support the severity of pain or symptoms alleged); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain, a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.") (citation omitted); Social Security Ruling ("SSR") 96-7p,[6] 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Here, none of the ALJ's other purported reasons for rejecting plaintiff's credibility is legally adequate. Thus, even if the ALJ's characterization of the medical evidence as it relates to plaintiff's credibility is supported by substantial evidence, the ALJ cannot rely solely upon this rationale to discount plaintiff's subjective symptom testimony.

Defendant contends that the fact that plaintiff sought employment with his previous employer is evidence of his belief that he could work, and further argues that such evidence creates an inconsistency in plaintiff's testimony that the ALJ can consider in making his credibility finding. [JS at 19.] Defendant additionally argues that "[t]reatment notes from [p]laintiff's own

---

[6] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

treating psychiatrists indicate that he was not experiencing serious psychosis and that he was doing well on his medications," and that "[i]nconsistency between [p]laintiff's statements and the medical evidence is a valid reason for discounting credibility."[7] [JS at 20 (citations omitted).] "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

In sum, as the ALJ failed to provide any clear and convincing reasons supported by substantial evidence to support his rejection of plaintiff's credibility, remand is warranted.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

---

7 Having reviewed the medical record, the Court finds that defendant's selective citations mischaracterize the record as, for example, plaintiff's condition was serious enough to warrant two psychiatric hospitalizations. [See generally AR at 336-41, 376-80.] During these episodes, plaintiff was given diagnoses of major depression with psychotic features, as well as [Global Assessment of Functioning ("GAF")] assessments of 20 and 30 [AR at 336 (June 6-7, 2010, medical records from Los Angeles County-USC Medical Center), 343 (June 7-9, 2010, medical records from White Memorial Medical Center)]. Plaintiff's treatment records over the course of his treatment at the POC further indicate that plaintiff was given diagnoses of major depressive disorder with psychosis, and schizoaffective disorder. [See AR at 354 (progress note dated October 24, 2011), 353 (progress note dated December 1, 2011).]

Here, there are outstanding issues that must be resolved before a final determination can be made. However, in an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom allegations, the ALJ on remand shall reassess plaintiff's credibility.

Next, in Issue No. 1, plaintiff contends that the ALJ erred in the assessment of plaintiff's mental residual functional capacity by improperly rejecting the opinion of plaintiff's treating psychologist and "finding that [p]laintiff's only mental limitation was to 'the performance of unskilled work involving simple routine tasks.'" [JS at 3-8, 14-15.] While, in light of the remand of this action, the Court exercises its discretion not to address this contention in full, it nevertheless notes that the reasons given by the ALJ for rejecting the contradicted opinion of plaintiff's treating physician may not be specific and legitimate reasons supported by substantial evidence in the record. See Carmickle, 533 F.3d at 1164 ("Where [a treating physician's] opinion is contradicted ... it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.") (internal quotation marks and citation omitted). For example, to the extent the ALJ rejected Dr. Mahnovski's opinion because it was "not accompanied by treating records," this reason is belied by the record, which includes treating records containing multiple diagnoses of depression not otherwise specified, major depression, dysthymia,[8] psychosis, schizoaffective disorder, and Global Assessment of Functioning scores of 42 and 55,[9] which indicate moderate-to-serious

---

[8] Dysthymia "represents a consolidation of DSM-IV-defined chronic major depressive disorder and dysthymic disorder." See Persistent Depressive Disorder (Dysthymia) Symptoms, PSYCHCENTRAL, http://psychcentral.com/disorders/dysthymic-disorder-symptoms/ (last visited May 28, 2014).

[9] A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000). A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 34. A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (continued...)

difficulty in "social, occupational or school functioning." [AR at 18; see, e.g., AR at 353-54, 360, 363, 365, 371, 374]; see also Kager v. Astrue, 256 Fed.Appx. 919, 921 (9th Cir. 2007) ("While it is true that the notes setting forth [the treating physician]'s opinion did not themselves refer to specific limitations or clinical findings, [the treating physician]'s other treatment notes did contain objective findings supporting her opinion that [plaintiff] was unable to [perform past relevant work].").] Accordingly, the ALJ on remand shall reevaluate the medical evidence, and to the extent the ALJ may find plaintiff's treating physician to be contradicted by the opinion of an examining physician, the ALJ may reject the treating physician's opinion only by providing specific and legitimate reasons that are supported by substantial evidence in the record. See Carmickle, 533 F.3d at 1164.

Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five,[10] with the assistance of a VE, whether plaintiff is capable of performing other work existing in significant numbers in the national economy.[11]

/

/

/

/

/

/

/

/

/

---

[9](...continued)
(e.g., few friends, conflicts with peers or coworkers). Id.

[10] Nothing in this Order is intended to disturb the ALJ's step four finding that plaintiff is unable to perform his past relevant work. [See AR at 19.]

[11] In light of the Court's Order, it is unnecessary to reach plaintiff's remaining contention. [See JS at 3, 21-24.] Plaintiff, however, shall not be precluded from raising this issue, or any other issue, on remand.

/

VII.

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 5, 2014

Paul L. Abrams

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE